UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSHUA MARISCAL,

Plaintiff,

v.

GRACO, INC.,

Defendant.

Case No. 13-cv-02548-TEH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on June 16, 2014, on the motion of Defendant Graco, Inc. ("Defendant") for summary judgment. After carefully considering the written and oral arguments of the parties, and the relevant law, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for the reasons discussed below.

**BACKGROUND**

In this product liability case, Plaintiff Joshua Mariscal ("Plaintiff") alleges that he was injured on July 29, 2012, while attempting to clean and repair a used, Graco Magnum X7 Airless Paint Sprayer (the "Sprayer"), which he had been given by his brother-in-law. *See* Mariscal Dep. ("Tr.") 22:6-10; 26:5-8, Docket No. 41-2. The Sprayer was manufactured by Defendant in July 2008. *See* Rivord Decl. ¶ 9, Docket No. 41-10. The used Sprayer was "tattered," and the filter on the bottom was full of dried paint. *See* Tr. 26:5-8. On July 28, 2012, Plaintiff turned on the Sprayer, heard the motor labor, and concluded that the Sprayer was clogged because it appeared to draw water but nothing came out of the spray gun. *See id*. at 32:15-24. Plaintiff purchased a new filter and installed it on the Sprayer on the morning of July 29, 2012. *See id*. at 38:19-23. Plaintiff also cleaned the two intake hoses, the hose that connects the Sprayer to the gun, and cleaned the gun itself. *See id*. at 48: 2-9. While cleaning the hose, he used compressed air and wore eye glasses. *See id*. at 50:19-51:24. Plaintiff then connected the Sprayer to a

bucket of water, activated the Sprayer, turned up the pressure, and attempted to spray, but the gun did not spray.  *See id.* at 48:12-17; 55:10-14.

Plaintiff downloaded from Defendant's website the Operation Manual for the Sprayer, and referenced these instructions immediately before the accident.  *See id.* at 60:7-61:4.  Plaintiff testified that he did not read the "entire" manual, and when asked if he read the "first few pages," which contain warnings, he answered "probably not."  *Id.* at 71:6-16.  Nonetheless, when asked whether he read the "Personal Protective Equipment" warning subsection of the Operation Manual, which appears in these first few pages, Plaintiff answered "Umm, probably not in its entirety, but yes, I . . . I always go through the safety warnings."  *Id.* at 81:5-11.  This section states:  "Wear appropriate protective equipment when in the work area to prevent serious injury, including eye injury . . ."  *Id.* at 81:12-16; *see also* Docket No. 41-3 at 5 (Operation Manual reviewed at deposition); *see also* Operation Manual ("Operation Manual") at 5, Rivord Decl. Ex 4, Docket No. 41-14 ("You must wear appropriate protective equipment when operating, *servicing*, or *when in the operating area of the equipment to help protect you from serious injury, including eye injury*, inhalation of toxic fumes, burns, and hearing loss.  This equipment includes but is not limited to: * *Protective eye wear* . . . .").[1]

The Warning section instructs the user that "[t]he following warnings are for the setup, use, grounding, maintenance and repair of the equipment.  The exclamation point symbol alerts you to a general warning *and the hazard symbol refers to procedure-specific risks*.  Refer back to these warnings.  Additional, product-specific warnings may be found throughout the body of this manual where applicable."  Operation Manual at 3 (emphasis added).  Plaintiff testified that he specifically referenced the section of the Operation Manual entitled "Pressure Relief Procedure," *see* Tr. 75:4-14, which contains hazard

---

[1] Defendant asserts, and Plaintiff does not dispute, that the Operation Manual that Plaintiff identified at his deposition differs slightly but not in any substantive respect from the Operation Manual included with the Sprayer, and available on Defendant's website.  *Compare* Tr. 81:15-17; Docket No. 41-3 at 5 *with* Rivord Decl. ¶¶ 7, 10 & Operation Manual.  *See also* Mot. at 3 n. 1, Docket No. 41.

United States District Court
Northern District of California

United States District Court
Northern District of California

symbols that correspond to the specific danger of "skin injection" hazard and general warning, but does not include the hazard symbol that corresponds to the need to wear personal protective equipment, including eye wear. *See* Operation Manual at 9-10.

Once Plaintiff determined that the Sprayer would not function properly after cleaning the filter and hose, he again consulted the Pressure Relief Procedure section of the Operation Manual, *see* Tr. 64:12-64:2, and decided to attempt additional cleaning. Following the steps set forth in the pressure relief procedure, Plaintiff (1) turned off the power switch and unplugged the power cord; (2) turned the prime/spray valve to prime to relieve pressure; (3) triggered the gun to relieve pressure, but nothing came out. *See id.* at 75:10-24. Plaintiff does not recall whether he engaged the trigger lock or whether the Sprayer he used had a trigger lock, which is the fourth step of the procedure, but this fact does not appear to be material. *See id.* at 75:10-15. Plaintiff then proceeded to the final step of the instructions, which states: "If you suspect the spray tip or hose is clogged or that pressure has not been fully relieved after following the steps above, VERY SLOWLY loosen tip guard retaining nut or hose end coupling to relieve pressure gradually, then loosen completely. Clear hose or tip obstruction. Read Unclogging Spray Tip, page 13." *See* Operation Manual at 9 (capitalization in original); Tr. 76:25-77:8. Plaintiff testified that he believed the hose was clogged, and that the system was not under pressure at this time. *See* Tr. 79:6-22. Plaintiff testified that there was nothing to indicate that the Sprayer was under pressure; the Sprayer contained "no gauge, no kind of symptoms" to indicate pressurization. *Id.* at 80:4-13. Plaintiff then loosened the hose end coupling very slowly. *See id.* at 77:9-11; 78:9-13. As he loosened it, an "explosion" occurred, sending debris into his eyes and causing lasting injury; his face was approximately 30 inches from the coupling at the time. *Id.* at 63:8-16; 89:1-90:6. Plaintiff was not wearing eyeglasses at the time of the accident. *See id.* at 71:2-5. He avers that he did not know the Sprayer was pressurized at this time, and that had he known, he would not have tried to disconnect the gun from the hose. *See* Mariscal Decl. ¶ 4, Docket No. 42-2. He further avers that had there been a hazard warning symbol advising him to wear protective glasses in the

United States District Court
Northern District of California

1    Pressure Relief Procedure section of the Operation Manual, he would have followed the

2    warning.  *See id.* ¶ 5.

3           Plaintiff sued Defendant in California Superior Court, in the County of Alameda, on

4    April 30, 2013.  Plaintiff alleged one cause of action for product liability, which contained

5    three counts:  (1) breach of implied warranty; (2) negligence; and (3) strict liability.  On

6    June 6, 2013, Defendant removed the case to this Court.  Defendant answered the

7    complaint, and moved for summary judgment on all claims on May 12, 2014.

8

9    **LEGAL STANDARD**

10          Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

11   appropriate when there is no genuine dispute as to material facts and the moving party is

12   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[2]  Material facts are those

13   that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

14   248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

15   reasonable jury to return a verdict for the nonmoving party.  *Id.*  The Court may not weigh

16   the evidence and must view the evidence in the light most favorable to the nonmoving

17   party.  *Id.* at 255.  The Court's inquiry is "whether the evidence presents a sufficient

18   disagreement to require submission to a jury or whether it is so one-sided that one party

19   must prevail as a matter of law."  *Id.* at 251-52.

20          A party seeking summary judgment bears the initial burden of informing the Court

21   of the basis for its motion, and of identifying those portions of the pleadings and discovery

22   responses that "demonstrate the absence of a genuine issue of material fact."  *Celotex*

23   *Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Where the moving party will have the burden

24   of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could

25   find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978,

26   984 (9th Cir. 2007).  However, on an issue for which its opponents will have the burden of

27   _____

28   [2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil
     Procedure.

4

proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must set out specific facts that establish a genuine dispute for trial to defeat the motion. Fed. R. Civ. P. 56(c)(1); *Anderson,* 477 U.S. at 256.

A court need consider only the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted); *see also Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001) (same).

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims for breach of warranty, strict liability for design defect and failure to warn, as well as negligence under theories of design defect and failure to warn. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment.

## I.      Evidentiary Objections

As a preliminary matter, Defendant objects to evidence Plaintiff submitted concurrently with his opposition briefing. *See* Objections, Docket No. 43. Specifically, Defendant objects to, and seeks to exclude from evidence, the May 22, 2014 Declaration of David Rondinone (the "Second Expert Opinion"), *see* Docket No. 42-1, as it states new expert opinions that should have been previously disclosed in Rondinone's Rule 26(a) expert disclosure (the "First Expert Opinoin"), *see* Docket No. 41-7. Defendant also seeks to exclude the May 27, 2014 Declaration of Joshua Mariscal ("Mariscal Declaration"), *see* Docket No. 42-2, on the grounds that it contains self-serving statements that contradict his deposition testimony. On June 9, 2014, the Court ordered Plaintiff to respond to

United States District Court
Northern District of California

1   Defendant's evidentiary objection.  On June 11, 2014, Plaintiff responded, asserting that

2   the Second Expert Opinion merely restated opinions that were earlier disclosed.

3   Moreover, Plaintiff argued that Defendant was on notice of Plaintiff's asserted defect and

4   theory of the case from the First Expert Opinion, and that any deficiencies in that prior

5   disclosure were waived by Defendant's failure to object or depose him.  Plaintiff also

6   argued that the Mariscal Declaration was not a sham declaration, and was therefore fully

7   admissible.

8

9   **A.     The Second Expert Opinion**

10         The Court excludes the Second Expert Opinion as an untimely and improper expert

11   disclosure.  Rule 26 requires that a party's expert witness disclose, in a written report, "a

12   complete statement of all opinions the witness will express" at trial, and the basis and

13   reasons for them.  Fed. R. Civ. P. 26(a)(2)(B)(i).  Rule 26 further provides that these

14   disclosures be made at the times directed by the court.  *See* Fed. R. Civ. P. 26(a)(2)(D).

15   Rule 37, in turn, provides that if a party fails to provide the information required by Rule

16   26(a), "the party is not allowed to use that information or witness to supply evidence on a

17   motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

18   Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

19   1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding

20   the use at trial of any information required to be disclosed by Rule 26(a) that is not

21   properly disclosed." ).

22         Here, the last day for Plaintiff to disclose the identity of any expert to be used at

23   trial was March 3, 2014, and the last day to comply with the written report requirements of

24   Rule 26(a)(2)(B) by providing a report containing the expert's complete opinion was

25   March 17, 2014.  *See* Sept. 10, 2013 Pretrial Order at 2, Docket No. 32.  The Pretrial Order

26   explicitly states that "[f]ailure to comply with these deadlines will prevent a witness from

27   testifying as an expert."  *Id.*  The last day Plaintiff could serve a rebuttal report was May

28   17, 2014, and the close of all discovery, except for depositions of expert witnesses, was

6

April 21, 2014. *See id.* at 1.

Rondinone provided his First Expert Opinion via his Rule 26 expert disclosure on March 25, 2014. The Second Expert Opinion, dated May 22, 2014, and submitted in support of Plaintiff's summary judgment opposition briefing on May 27, 2014, was therefore untimely.[3] Moreover, the Second Expert Opinion did not merely revisit opinions previously stated, but it included new previously undisclosed opinions.

Comparing the First and Second Expert Opinions is instructive. Rondinone disclosed the following in his First Expert Opinion:

> II.      Scope of Engagement
>
> I was retained by plaintiff in this case to analyze the design failure of a Graco airless paint sprayer being used by plaintiff when he suffered severe and permanent injuries to his eyes. I was asked to determine why the sprayer "exploded" in plaintiff's face. I was also asked to review and comment on the warnings provided by Graco to users of the airless sprayer. . . .
>
> IV.     Summary of Opinion
>
> Based on my understanding of the issues in the complaint and the scope of my engagement, it is my preliminary opinion that:
>
> (1) Graco Sprayer was capable of generating 3000 psi pressure;
>
> 2) The method of pressure relief only functions when mechanism [sic] is not clogged. The instructions offer two methods to relieve pressure - turning the valve to "prime" and triggering the gun. The instructions also foresee an event when these actions do not relieve the pressure. They state "If you suspect the spray tip or hose is clogged or that pressure has not been relieved after following the steps above, VERY SLOWLY loosen tip guard retaining nut or hose end coupling to relieve pressure gradually, then loosen completely." *However, the design of the sprayer is such that if it is clogged, there is no method of notifying the user that it is still under pressure, and thus the user may not be aware that the system is under pressure.*

---

[3] Defendant notes that Plaintiff's First Expert Opinion disclosure on March 25, 2014, while technically after the March 17, 2014 deadline, was arrived at with the consent of Defendant, as both parties agreed that Defendant would not move to enforce the deadline, provided Plaintiff extended additional time for Defendant to provide its Rule 26 expert witness disclosures. This date shifting, however, does not appear material to the present dispute, and Plaintiff does not argue to the contrary.

United States District Court
Northern District of California

(3) The mechanisms for pressure relief (the gun and the prime valve) can get clogged if paint is left to dry in system, and Graco had foreseen that paint may be left in system and create clogs.

(4) *There is no mechanism to notify the operator that the system is under pressure.*

(5) *Following the instructions can present the operator with hazardous conditions - (e.g. undoing a threaded joint when the system is under pressure with paint debris mixed with water). . . .*

First Expert Opinion at 2:22-3:11 (emphasis added), Docket No. 41-7. Thus, under Rule 26(a)(2)(B)(i), Defendant was entitled to rely on this expert disclosure as constituting a complete statement of all opinions Rondinone would express at trial.

The Second Expert Opinion, however, substantially enlarged the scope of Rondinone's previously disclosed expert opinion. In support of Plaintiff's opposition to summary judgment, Rondinone averred:

4. In my professional opinion the airless paint sprayer in question was defectively designed because, although acknowledging that their design for relieving pressure might not actually work to relieve pressure, Graco did nothing more to design or incorporate into the design a devise [sic], such as a gauge or digital readout that would tell the user that in fact the pressure had not been relieved when the steps to relieve pressure were followed.

5. That other models of Graco airless sprayers currently on the market have pressure level digital readouts which clearly advise the user that the sprayer is still pressurized and the level of pressure. Graco, if they had chosen to do so, could have easily incorporated this into their design of the sprayer in question.

6. In my opinion, if Graco's design had incorporated such a device, this accident would not have occurred because Mr. Mariscal would have been alerted to the fact that the sprayer was still pressurized.

7. It is my opinion that the warnings, both on the sprayer and contained in the operations manual are inadequate and with specific regard to warning of the need of protective equipment, i.e., safety glasses when "Relieving Pressure" as described on page 9 of the manual such a warning is nonexistent. In addition, the "hang tag" identified as Exhibit 2 to Mr. Rivord's declaration was not on the sprayer in question and even if it had been it does not warn of the risk of pressure not being relieved nor does it refer to the need to wear "Personal Protective Equipment." If Graco believed that eye protection

United States District Court
Northern District of California

was needed when performing the steps to relieve pressure it should have included that warning on page 9 of the manual as they did on other pages of the manual such as page 10.

8. In my opinion had adequate warnings been included in the operations manual this accident may or likely would not have occurred because Mr. Mariscal who, according to his deposition, was in the habit of wearing safety glasses, would have done so in this case.

9. In my opinion the warnings attached to Mr. Rivord's declaration are inadequate and do not warn at all about the hazards of high pressure as it relates to the facts of this accident.  If fact, said warnings say nothing whatsoever about wearing personal protective equipment.   Finally, Graco's "Quick Start-Up Guide" is totally inadequate and does not in any way warn of the need to wear "Personal Protective Equipment."

Second Expert Opinion ¶¶ 4-9.

Rondinone, in this Second Expert Opinion, explicitly opines that the Sprayer was defectively designed by virtue of a failure to include a pressure gauge, that other sprayers on the market include such a gauge, that Defendant could have easily incorporated such a mechanism into the design of the Sprayer, and had Defendant done so, the accident would not have occurred because Plaintiff would have been alerted to the presence of pressure within the Sprayer.  These opinions are new, as are Rondinone's opinions as to the adequacy of the warnings.  Plaintiff directs the Court to *Occidental Fire & Casualty of North Carolina v. Intermatic Inc.* for the proposition that Rule 37(c)(1) should not operate to exclude evidence where only "superficial differences" separate prior and supplemental expert opinion.  *See* No. 2:09-CV-2207 JCM VCF, 2013 WL 4458769, at *3 (D. Nev. Aug. 15, 2013) (declining to impose Rule 37(c)(1) exclusion where supplemental expert statement that the fire originated "in the True freezer" was not materially different from prior statement that the area of origin was "in or on the True freezer").  However, the differences between the First and Second Expert Opinions are material both in substance – as is plainly evident through comparison – and in effect.

Defendant contends that it was substantially prejudiced from this late disclosure.  Defendant did not address the substance of the Second Expert Opinion when it moved for summary judgment because those opinions had not been disclosed.  Consequently,

Defendant did not address Rondinone's expert opinions with respect to the placement of multiple warnings to wear eye protection, and the explicit opinion that the design defect of the Sprayer was a lack of a pressure gauge or device to alert the user that the Sprayer was pressurized.  Defendant represents that it chose not to depose Rondinone because it concluded that his testimony would have been irrelevant at trial because he did not opine as to the adequacy of warnings or any defect in the sprayer, such that Defendant had "no reason to attack or question Mr. Rondinone's qualifications to provide the opinions he provided, because he was not critical of the Graco design."  Objections at 5.  Because the new opinions disclosed in the Second Expert Opinion changed this litigation strategy and "substantially prejudice[d] Graco in this litigation," *see id.*, Defendant objected to Plaintiff's submission of this evidence.

Plaintiff has not demonstrated that the Second Expert Opinion, and the statements therein, was a "substantially justified" or "harmless" late disclosure, and thus did not advance a persuasive argument as to why Plaintiff should be allowed to rely upon this evidence in opposition to summary judgment or at trial.  *See* Fed. R. Civ. P. 37(c)(1). Plaintiff's argument that the First Expert Opinion placed Defendant "on notice" as to the lack of pressure gauge defect is troubling because, under Rule 26(a)(2)(B)(i), Defendant was entitled to a *complete* disclosure of all opinions – not a sneak preview of a moving target.  "Although Rule 26(e) obliges a party to 'supplement or correct' its disclosures upon information later acquired, this 'does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset).  To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports . . . ."  *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (citation omitted).  Tellingly, Rondinone in the First Expert Opinion describes his opinions therein as "preliminary" as opposed to "complete."  *See* First Expert Opinion at 2:20. Accordingly, as the Second Expert Opinion – and the statements therein – was untimely, prejudicial and made without substantial justification, the Court SUSTAINS Defendant's

objection and EXCLUDES Rondinone's Second Expert Opinion under Rule 37(c)(1). Plaintiff may, however, rely on the opinions disclosed in the First Expert Opinion, dated March 25, 2014, for the purposes of this motion and at trial.

## B.    The Mariscal Declaration

"A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).  Defendant moves to exclude the Mariscal Declaration as self-serving and contradictory.  Defendant objects to two averments made by Plaintiff:  (1) that if there were a hazard symbol advising him to wear protective glasses in the section of the manual for relieving pressure, which he read prior to the accident, he would have followed the warning and donned safety glasses, *see* Mariscal Decl. ¶ 5; and (2) that he did not believe the paint Sprayer was pressurized, and would not have tried to disconnect the gun from the hose as described in the Operation Manual if he believed it were pressurized, *see id.* ¶ 4.  Defendant argues that Plaintiff's first averment is self-serving because – Defendant asserts – Plaintiff did not follow the warnings that he did read.  Defendant did not direct the Court in its objection to any testimony by Plaintiff that contradicts this averment, but even if it had done so, Defendant's argument goes to Plaintiff's credibility, which the Court does not weigh on summary judgment.  *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed.").  Thus, Defendant's objection to Plaintiff's first averment is OVERRULED.  With respect to the second averment, in the absence of a specific citation to the record, and given Plaintiff's testimony that he did not believe the Sprayer was pressurized, *see, e.g.*, Tr. 65:9-12; 68:5-6, the Court declines to question Plaintiff's credibility or find that this statement is mutually exclusive to an unidentified statement made in his deposition.  Thus, Defendant's objection to Plaintiff's second averment in the Mariscal Declaration is OVERRULED.

## II.     Breach of Warranty Claim

Defendant moves for summary judgment on Plaintiff's claims for breach of warranty.  Plaintiff failed to address these arguments in his opposition brief, and therefore conceded these claims.  *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n. 2 (N.D. Cal. Mar. 10. 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss as an "abandonment of those claims"); *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (noting that a party abandoned claims not defended in opposition to a motion for summary judgment).  Defendant's motion for summary judgment on this claim is GRANTED.

## III.    Strict Liability Design Defect Claims

Defendant moves for summary judgment on Plaintiff's strict liability design defect claim on the basis that Plaintiff cannot show by any competent evidence a design defect in the Sprayer, or how that defect caused his injury.  "A manufacturer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product."  *Saller v. Crown Cork & Seal Co., Inc.,* 187 Cal. App. 4th 1220, 1231 (2010).  Product liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn.  *See id.* (citation omitted).  Here, Plaintiff does not assert strict liability under a manufacturing defect theory, but rather asserts strict liability under theories of design defect and failure to warn.  A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.  *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 429 (1978).  In *Barker*, the California Supreme Court recognized two tests for proving design defect: the "consumer expectation test" and the "risk-benefit test."  *Id*. at 432.  Defendant moves for summary judgment on Plaintiff's strict liability design defect claim under both tests.

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.     Consumer Expectation Test

The "consumer expectation test" permits a plaintiff to prove design defect by demonstrating that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* at 426-27.  "If the facts permit an inference that the product at issue is one about which consumers may form minimum safety assumptions in the context of a particular accident, then it is enough for a plaintiff, proceeding under the consumer expectation test, to show the circumstances of the accident and the objective features of the product which are relevant to an evaluation of its safety, leaving it to the fact-finder to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (citing *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 563-66 (1994) (internal quotation marks omitted)). Expert testimony as to what consumers ordinarily "expect" is generally improper.  *See Soule,* 8 Cal. 4th at 567.  The "essential aspect" of this test involves "the jurors' own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence . . . [I]t is generally sufficient if the plaintiff provides evidence concerning (1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety."  *Campbell v. General Motors Corp.*, 32 Cal. 3d 112, 127 (1982)*.*

The consumer expectation test is appropriately invoked for Plaintiff's strict liability design defect claim.  As a preliminary matter, Defendant is mistaken that "Plaintiff needs expert witness testimony to support" this test.  *See* Mot. at 9:17-18.  Plaintiff can establish liability under the consumer expectation test without the use of expert testimony.  *See Campbell*, 32 Cal. 3d at 126 (holding that plaintiff's evidence, including her own testimony and pictures of a city bus without handrails was "sufficient to establish the objective conditions of the product," and thus permit the claim that the bus was defectively designed because her seat lacked a handrail, which would have prevented her injuries); *see also Soule,* 8 Cal. 4th at 567 (expert testimony as to what consumers ordinarily "expect" is

13

generally improper).  Here, the Sprayer was not a commercial or professional sprayer.
According to Defendant's Product Safety and Compliance Manager, the model of sprayer
at issue here is aimed at the "low-end" user, "maybe a consumer or a contractor type that
doesn't use it a lot . . . [o]r somebody that paints their fence one summer and paints their
garage next summer."  Rivord Dep. at 122:16-22, Docket No. 42-3.  Thus, like the "low-
end" user to which the Sprayer is marketed and sold, jurors may form minimum safety
assumptions about the Sprayer in the context of their own ordinary expectations.  This
product squarely fits within the realm of the consumer expectation test.

Under *Campbell*, "once a plaintiff establishes that the consumer expectation test is
properly applied to his or her case, the threshold for withstanding a motion for summary
judgment [], thus permitting the jury to determine whether the allegedly defective product
satisfied ordinary consumer expectations, is quite low."  *Chavez v. Glock, Inc.*, 207 Cal.
App. 4th 1283, 1311(2012).  That threshold is met here because of Plaintiff's testimony
about his experience and use of the Sprayer.  *Cf. Campbell*, 32 Cal. 3d at 126.  Plaintiff
presents evidence from which a reasonable fact-finder could conclude that the Sprayer
failed to perform as safely as an ordinary consumer would have expected when used in an
intended or reasonably foreseeable manner.  Defendant's Product Safety and Compliance
Manager testified that part of the testing of Defendant's sprayers include putting paint in
the sprayer and allowing it to dry over the course of weeks, and that dried paint in a
sprayer is foreseeable, although he was not able to testify with certainty that such testing
had been done with the X7 model.  *See* Rivord Dep. at 37:7-38:8.  Therefore, it is
reasonably foreseeable that a user of the Sprayer in attempting to clear a clog in it, which
entails relieving pressure first, would follow the Pressure Relief Procedures provided by
the Defendant in the Operation Manual, just as Plaintiff testified he did.  Plaintiff testified
that the Sprayer did not contain a pressure gauge to otherwise indicate that pressure existed
in the system.  *See* Tr. 68:7-13; 80:4-13.  He averred that had he been alerted to pressure in
the system, he would not have tried to disconnect the hose as described in the Operation
Manual.  *See* Mariscal Decl. ¶ 4.  He also averred that had a specific warning to wear

14

eyeglasses been present on the page of the Operation Manual relating to relieving pressure or clearing the clog, he would have followed the instructions and worn eyeglasses.  *See id*. ¶ 5.  Believing that the system was not under pressure, he very slowly loosened the hose, as instructed, and was injured by escaping debris.  The lack of an indicator that the system was pressurized was a substantial factor in Plaintiff's decision to detach the hose, which caused pressurized air and debris to injure his eye.  Drawing all inferences in favor of Plaintiff, he has raised a genuine and material issue of fact as to whether the Sprayer's design was defective under the consumer expectation test because he has offered testimony about his use of the Sprayer, the circumstances surrounding his injury, and a feature of the Sprayer – a lack of a pressure gauge – that is relevant to an evaluation of its safety.

Defendant argues that Plaintiff's claims nonetheless fail under the consumer expectation test because ordinary consumers know that caution and protective eye equipment must be used around systems that create high pressure, such as airless paint sprayers.  Defendant also argues that all of Plaintiff's claims fail because the proximate cause of Plaintiff's injury was not a defect in the Sprayer, but rather was his failure to wear safety eyeglasses.  These arguments, however, present factual questions for the jury.  To the extent Defendant argues that Plaintiff's failure to wear protective eye equipment constitutes product misuse, which may act as a "superseding cause" of injury, *see Soule,* 8 Cal. 4th at 573, fn. 9, or that this failure establishes Plaintiff's comparative fault so as to offset damages for design defect, *see Daly v. General Motors Corp.,* 20 Cal.3d 725, 742 (1978) (applying comparative fault doctrine to actions founded on strict product liability), Defendant may attempt to present those theories to the jury.  At this stage, however, the Court cannot grant, and therefore DENIES, Defendant's motion for summary judgment on Plaintiff's design defect claim to the extent he relies on the consumer expectation test.

### B.      Risk-Benefit Test

A product is defective under the risk-benefit test if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in

light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design.  *See Barker*, 20 Cal. 3d at 432.  The relevant factors include: "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design."  *Id*. at 431.  "Once the plaintiff has made a prima facie showing that his or her injury was caused by the product's defective design, the burden shifts to the defendant to establish that, in light of the relevant factors, the product is not defective."  *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1313-14 (2011).

As discussed above, Plaintiff has made a prima facie showing that Defendant manufactured the Sprayer, that he was harmed, and that the Sprayer's design was a substantial factor in causing his harm.[4]  The burden therefore shifts to Defendant to present evidence that the Sprayer was not defective because of the failure to include a pressure gauge in light of the *Barker* factors.  Defendant has failed to present any such evidence, and its motion for summary judgment must therefore be DENIED.

However, because Defendant's failure to present risk-benefit evidence is due, at least in part, to Plaintiff's late expert disclosure, the Court will allow Defendant until **July 11, 2014**, to conduct discovery and disclose supplemental expert testimony with respect to risk-benefit analysis on the inclusion of a pressure gauge as an alternative design. Alternatively, if Plaintiff wishes to proceed to trial only on the consumer expectation test

---

[4] Plaintiff need not rely on expert testimony to establish his prima facie case under the risk-benefit test.  *See, e.g.*, *McCabe*, 100 Cal. App. 4th at 1127 (noting defendant's failure to provide any evidence negating design defect under the alternative risk-benefit test mandated reversal of order granting summary judgment because plaintiff had met prima facie burden of showing that design caused injury based on plaintiff's testimony that when airbag failed to deploy, her head crashed into steering wheel causing injuries); *see also Monigan v. Nat'l Presto Indus., Inc.*, No. C 12-3698 SI, 2013 WL 6662319, at *5 (N.D. Cal. Dec. 17, 2013) (denying summary judgment under risk-benefit test after finding plaintiff's testimony established prima facie showing that product's design proximately caused his injury and genuine dispute of fact existed as to risk-benefit balancing).

United States District Court
Northern District of California

1   and not the risk-benefit test, he may file a stipulation abandoning his claim under the risk-

2   benefit test.  Any such stipulation must be filed on or before **June 30, 2014**, to allow

3   Defendant sufficient time to complete discovery, if needed.

4

5   **IV.    Strict Liability Failure to Warn Claim**

6           Plaintiff maintains that Defendant is liable for its failure to adequately warn of the

7   dangers of the X7 Sprayer under a theory of strict liability.  "Under California law, a

8   product may be defective because of the absence of an adequate warning of the dangers

9   inherent in its use.  Even though the product is flawlessly designed and manufactured, it

10  may be found defective within the general strict liability rule and its manufacturer or

11  supplier held strictly liable because of the failure to provide an adequate warning."

12  *Schwoerer v. Union Oil Co.,* 14 Cal. App. 4th 103, 111 (1993) (citation omitted).  Whether

13  a warning is adequate depends on several factors, among them "the normal expectations of

14  the consumer as to how a product will perform, degrees of simplicity or complication in its

15  operation or use, the nature and magnitude of the danger to which the user is exposed, the

16  likelihood of injury, and the feasibility and beneficial effect of including a warning."  *Id.*

17  (citation omitted).  "[T]he plaintiff must prove that the defendant's failure to warn was a

18  substantial factor in causing his or her injury."  *Huitt v. S. Cal. Gas Co.*, 188 Cal. App. 4th

19  1586, 1604 (2010).  Whether the warning is adequate is usually a question of fact.  *Id.*

20  (citation omitted).

21          Defendant moves for summary judgment on this claim on three grounds: (1) that

22  Defendant's warnings were adequate as a matter of law; (2) that Plaintiff's failure to read

23  the warnings proximately caused his own injuries; and (3) that Plaintiff was actually aware

24  of the risks, and thus reading additional warnings would have been irrelevant.  The Court

25  finds that genuine disputes of material fact preclude summary judgment on this claim.

26          First, Defendant's warnings are not adequate as a matter of law.  Defendant

27  contends that it "provided multiple warnings in multiple sources with the Sprayer,

28  including warnings of the risk of pressurized contents, the potential for eye injury, and the

need to wear personal protective equipment, including protective eyewear, at all time while in the work area."  Mot. at 16:21-24; *see also* Rivord Decl. Exs. 1-3 (identifying embossed warning on Sprayer, hang tag, and Quick Start-Up Guide, which contain various warnings included with the Sprayer when sold new).  Defendant points to the "Warnings" section of both the Operation Manual and Repair and Parts Manual as further evidence of the adequacy of the warnings.  This section, which is identical in both, states:  "The following warnings are for the . . .  maintenance and repair of the equipment.  The exclamation point symbol alerts you to a general warning and the hazard symbol refers to *procedure-specific risks*.  Refer back to these warnings.  Additional, product-specific warnings may be found throughout the body of this manual where applicable."  Operation Manual at 3 (emphasis added); *id.* Ex. 5 at 3 (Repair and Parts Manual).  The next three pages in the Warnings section identify various safety hazards and precautions to undertake, and identify each hazard with a specific hazard symbol, which alerts the user of a procedure-specific risk. *See* Operation Manual at 3-5.  Under the heading corresponding to "Personal Protective Equipment" (and its symbol which depicts a person's head with mask, ear protection, and eye glasses), the Operations Manual states:

> You must wear appropriate protective equipment when operating, *servicing*, or *when in the operating area of the equipment to help protect you from serious injury, including eye injury*, inhalation of toxic fumes, burns, and hearing loss. This equipment includes but is not limited to: * *Protective eye wear* . . . .

Operation Manual at 5 (emphasis added).  Defendant asserts that these warnings, and the absence of any admissible expert testimony on failure to warn, show that the warnings were adequate as a matter of law.

Plaintiff argues, however, that there is ambiguity in the warning section which Plaintiff referenced prior to the incident based on his own testimony and other admissible evidence.  Plaintiff testified that he read the "Pressure Relief Procedure" of the Operation Manual prior to the incident, which he had accessed on his iPad.  *See* Tr. 60:7- 61:4; 64:12-65:2; 75:4-14.  The hazard symbols listed under the Pressure Relief Procedure

United States District Court
Northern District of California

section include:  1) the exclamation point symbol, and two symbols that relate to Skin Injection Hazard.  *Compare* Operation Manual at 9 (listing hazard symbols associated with procedure-specific risks) *with id.* at 2-3 (explaining symbols).  Nowhere does the hazard symbol for personal protective equipment appear in the Pressure Relief Procedure section. Notwithstanding the admonition to wear safety glasses at all times found in the Warning section of the Operation Manual and elsewhere, Plaintiff has presented evidence that the specific page covering the pressure relief procedure he utilized did not include an explicit warning to wear protective eye glasses.  A reasonable interpretation of the use of the hazard symbols is that unless the particular symbol is present under a specific activity, the associated danger is not present while performing that activity.  Viewing this evidence in a light most favorable to Plaintiff, and as adequacy of a warning is usually a question for the jury, Plaintiff has presented a genuine dispute of material fact that precludes summary judgment on this claim.

Defendant's additional arguments in favor of summary judgment on this claim are without merit.  Defendant asserts that Plaintiff did not read the warnings at all, and thus Plaintiff's failure to warn claim fails for lack of causation.  *See* Mot. at 18:18-19 (citing Tr. 71:6-16) (Plaintiff testifying that he "probably" did not read the "beginning part of the manual").  Defendant is correct "that a defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings," *Huitt*, 188 Cal. App. 4th at 1604, such as when "the person to whom the warning is directed does not read the warning [because, in that case,] there is no causation."  *Altman v. HO Sports Co.*, 821 F. Supp. 2d 1178, 1188 (E.D. Cal. 2011) (citation omitted).  There is, however, a genuine dispute of fact as to whether Plaintiff read the warnings:

> Q.    Did you read [the Personal Protective Equipment warning] before you were working on the sprayer?
> A.    Umm, probably not in its entirety, *but yes, I . . . I always go through the safety warnings.*

Tr. 81:8-11 (emphasis added).  When viewed in a light most favorable to Plaintiff, he testified that he "always" goes through the safety warnings, and did read at least some of

1    the safety warnings in the Operation Manual.  Thus, the Court cannot conclude that

2    undisputed evidence shows that Plaintiff failed to read the warnings, such that no stronger

3    warning would have prevented the harm.

4            Additionally, Defendant argues that Plaintiff's failure to warn claim also fails

5    because undisputed evidence shows that Plaintiff was actually aware of the risks associated

6    with – and need to wear eye glasses while using – the Sprayer, and that his disregard of

7    those known risks negates his failure to warn claim.  *See* Mot. at 18-20.   "Strict liability

8    for failure to warn does not attach if the dangerous propensity is either obvious *or known*

9    *to the injured person at the time the product is used*."  *Gonzales v. Carmenita Ford Truck*

10   *Sales, Inc.*, 192 Cal. App. 3d 1143, 1151-52 (1987) (emphasis added) (citing *Burke v.*

11   *Almaden Vineyards, Inc.*, 86 Cal. App. 3d 768, 772 (1978)).  While Defendant argues that

12   the evidence shows that Plaintiff had "actual knowledge of the specific danger at issue by

13   operating or *repairing* airless paint sprayers," Mot. at 19:8-9 (emphasis added), a

14   reasonable fact finder could conclude otherwise.  Plaintiff testified that he knew it was

15   important to wear protective gear, including eye glasses, and had done so in the past when

16   "spraying" paint, Tr. 103:18-104:4, and when using compressed air, *see id*. at 51:17-25,

17   and also knew that airless sprayers operated at high pressure, *see id*. at 87:9-88:1.

18   However, Plaintiff also testified that he did not believe the Sprayer was pressurized at the

19   time the accident occurred.  *See* Tr. 65:9-12; 68:5-6.  He had never cleaned an airless

20   sprayer that was clogged and did not work.  *See id.* at 102:25-103:3.  In short, Plaintiff has

21   not identified undisputed evidence that shows Plaintiff knew that there was a risk of eye

22   injury when following the pressure relief procedures while repairing or performing

23   maintenance on a non-operational airless sprayer, as opposed to using compressed air or

24   spraying paint from an operational airless prayer.  Although this is a close question, based

25   on the authority that adequacy of a warning is usually a question of fact for the jury, and

26   viewing the evidence in the light most favorable to Plaintiff, there is a triable issue of fact

27   on whether Plaintiff can be charged with knowledge of the dangerous propensity of the

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Sprayer in the circumstances in which the accident occurred. [5] Accordingly, the Court

2    DENIES Defendant's motion for summary judgment on this claim.

3

4    **V.      Negligent Design Claim**

5              A plaintiff alleging a design defect claim under a negligence theory must prove

6    "that the defect in the product was due to negligence of the defendant." *Chavez*, 207 Cal.

7    App. 4th at 1305 (citation omitted).  As with a general negligence claim, the plaintiff must

8    show breach of duty, causation, and damages.  *See Howard v. Omni Hotels Mgmt. Corp.*,

9    203 Cal. App. 4th 403, 428 (2012); *see also* California Jury Instructions—Civil ("CACI")

10   No. 1221 (entitled "Negligence–Basic Standard of Care").  CACI 1221 sets forth this basic

11   standard of care for a negligent design claim:

12              A [designer/manufacturer/etc.] is negligent if [it] fails to use
              the amount of care in [designing/manufacturing/etc.] the
13              product that a reasonably careful [designer/manufacturer/etc.]
              would use in similar circumstances to avoid exposing others to
14              a foreseeable risk of harm.

15              In determining whether [the defendant] used reasonable care,
              you should balance what [the defendant] knew or should have
16              known about the likelihood and severity of potential harm from
              the product against the burden of taking safety measures to
17              reduce or avoid the harm.

18   CACI 1221.  Therefore, a product is not negligently designed so long as "the manufacturer

19   took reasonable precautions in an attempt to design a safe product or otherwise acted as a

20   reasonably prudent manufacturer would have under the circumstances." *Barker*, 20 Cal.

21   3d at 434.

22              Plaintiff presents no admissible evidence regarding what a reasonably careful

23   designer or manufacturer would have done with respect to the design of the Sprayer.

24   Defendant presents evidence that an independent testing agency issued a report that the X7

25   Sprayer complied with industry standards, *see* Rivord Decl. Ex. 6, Docket No. 41-24, and

26

27   ─────────────
     [5] Defendant clarifies that it did not invoke the "sophisticated user" defense in its motion
28   for summary judgment.  *See* Reply at 4, Docket No. 44.  Accordingly, the Court does not
     reach this issue.

1    Defendant's Product Safety and Compliance Manager averred that the Sprayer was

2    manufactured in accordance with Defendant's practices, and was not defectively

3    manufactured or designed.  *See* Rivord Expert Disclosure at 4:1-10, Docket No. 41-5.

4    Having excluded the Second Expert Opinion, Plaintiff has failed to present any admissible

5    evidence about what amount of care in designing or manufacturing the Sprayer a

6    reasonably careful designer or manufacturer in the industry would have used in similar

7    circumstances to avoid exposing users to a foreseeable risk of harm while undertaking the

8    Pressure Relief Procedure utilized by Plaintiff.  Thus, Plaintiff has produced no other

9    admissible evidence from which a jury could deduce the appropriate standard of care,

10   which is fatal to his negligent design defect claim.  Accordingly, the Court GRANTS

11   summary judgment to Defendant on this claim.

12

13   **VI.    Negligent Failure to Warn**

14            To prevail on a claim for negligent failure to warn, a plaintiff must prove that: "(1)

15   the defendant manufactured, distributed, or sold the product; (2) the defendant knew or

16   reasonably should have known that the product was dangerous or was likely to be

17   dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or

18   reasonably should have known that users would not realize the danger; (4) the defendant

19   failed to adequately warn of the danger or instruct on the safe use of the product; (5) a

20   reasonable manufacturer, distributor, or seller under the same or similar circumstances

21   would have warned of the danger or instructed on the safe use of the product; (6) the

22   plaintiff was harmed; and (7) the defendant's failure to warn or instruct was a substantial

23   factor in causing the plaintiff's harm."  *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006,

24   1011-12 (N.D. Cal. 2009) *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir.

25   2012) (citing CACI 1222 [entitled "Negligence—Manufacturer or Supplier—Duty to

26   Warn—Essential Factual Elements] ).  This claim "requires a plaintiff to prove that a

27   manufacturer or distributor did not warn of a particular risk for reasons which fell below

28   the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have

United States District Court
Northern District of California

United States District Court
Northern District of California

1  known and warned about." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987,

2  1002 (1991).

3          Defendant did not point out an absence of evidence to support Plaintiff's case in this

4  respect.  In opposition to summary judgment, Plaintiff argues that testimony from

5  Defendant's own expert, Mr. Rivord, shows that the model of sprayer was marketed to

6  unsophisticated users, and this violated the standard of care.  *See* Opp'n at 16-17, Docket

7  No. 42.  With the exclusion of the Second Expert Opinion, in which Plaintiff's expert

8  opines about the adequacy of warnings, the Court is unclear how Plaintiff can meet this

9  evidentiary burden at trial.  The Court concludes, however, that the parties failed to

10 adequately develop the record regarding the reasonableness of Defendant's decision not to

11 provide more specific warnings (i.e. including the hazard symbol relating to personal

12 protective gear in the Pressure Relief Procedure section of the Operation Manual).  Thus,

13 the level of care exercised by Defendant remains an open question, and summary judgment

14 is inappropriate.  The Court DENIES Defendant's motion to the extent it moves for

15 summary judgment on Plaintiff's negligent failure to warn claim.

16

17 **CONCLUSION**

18         For the foregoing reasons, the Court:

19         (1) SUSTAINS Defendant's Evidentiary Objection to Plaintiff's Second Expert

20 Opinion, and EXCLUDES said opinion from use in this motion for summary judgment and

21 at trial;

22         (2) OVERRULES Defendant's Evidentiary Objection to the Mariscal Declaration;

23         (3) GRANTS summary judgment on Plaintiff's breach of warranty claim;

24         (4) DENIES summary judgment on Plaintiff's strict liability design defect claim;

25         (5) DENIES summary judgment on Plaintiff's strict liability failure to warn claim;

26         (6) GRANTS summary judgment on Plaintiff's negligent design defect claim; and

27         (7) DENIES summary judgment on Plaintiff's negligent failure to warn claim.

28         As discussed above, if Plaintiff wishes to proceed to trial only on the strict liability

23

design defect claim under the consumer expectation test, and not the risk-benefit test, any stipulation abandoning his claim under the risk-benefit test must be filed no later than **June 30, 2014**.  Should Plaintiff decline to stipulate, Defendant shall have until **July 11, 2014**, to conduct discovery and disclose supplemental expert testimony on this issue.

**IT IS SO ORDERED.**

Dated:   06/06/14

THELTON E. HENDERSON
United States District Judge